## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

AMY S. LYNCH,

      Plaintiff,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO. 3:22-cv-00023

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, Amy S. Lynch, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## I.   BACKGROUND

On November 26, 2019, Lynch protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of December 3, 2016. Her claims were

initially denied by state agency reviewers on July 7, 2020, and upon reconsideration on October 29, 2020. The plaintiff then requested an administrative hearing.

A hearing was held on March 30, 2021, before an administrative law judge, Frank Barletta (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Paul Anderson. The plaintiff was represented by a non-attorney representative at the hearing.

On April 28, 2021, the ALJ denied Lynch's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Lynch was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Lynch had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Lynch had the severe impairments of: depression, generalized anxiety disorder, social anxiety, attention deficit hyperactivity disorder, and post-traumatic stress disorder.

At step three, the ALJ found that Lynch did not have an

impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Lynch's limitations in four broad functional areas as a result of her mental disorders, finding moderate limitations in three functional areas—(1) interacting with others, (2) concentrating, persisting, or maintaining pace, and (3) adapting or managing oneself—and mild limitations in the functional area of understanding, remembering or applying information *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04, 12.06, and 12.15, the ALJ also considered whether Lynch's mental disorders were "serious and persistent," finding that her impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.*

§ 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Lynch's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Lynch had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[1] with the following limitations:

> [The] claimant is limited to simple, routine, repetitive tasks in a work environment free from fast paced production and involving only simple work related decisions with few if any work place changes, no interaction with the public, and occasional interaction with supervisors.

(Tr. 18.)

In making these factual findings regarding Lynch's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other

---

[1] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Lynch was unable to perform her past relevant work as a cashier II and machine operator, as actually or generally performed.

At step five, the ALJ concluded that Lynch was capable of performing other work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Lynch was capable of performing the requirements of representative occupations such as: potato chip sorter (DOT # 526.687-010); washer, agricultural produce (DOT # 529.685-258); or sorter, agricultural produce (DOT # 529.687-186). Based on this finding, the ALJ concluded that Lynch was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by

the Appeals Council, but her request was denied on November 16, 2021,

making the ALJ's April 2021 decision the final decision of the

Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on January 5,

2022. The Commissioner has filed an answer to the complaint, together

with a certified copy of the administrative record. Both parties have filed

their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not

whether the claimant is disabled, but whether the Commissioner's

finding that he or she is not disabled is supported by substantial evidence

and was reached based upon a correct application of the relevant law. *See*

*generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F.

Supp. 3d at 533 (describing standard of judicial review for social security

disability insurance benefits and supplemental security income

administrative decisions).

Lynch asserts on appeal that the ALJ's decision is not supported by

substantial evidence because: (1) the ALJ failed to properly evaluate

prior administrative findings, including the medical opinions of non-

examining state agency psychological consultants; (2) the ALJ failed to properly evaluate a joint medical opinion by her treating family physician, Joanna Brady, M.D., and her treating psychotherapist, Elizabeth Gotwals, LCSW; (3) the ALJ failed to properly evaluate the medical opinions of an examining psychologist, Christina N. Ryser, Ph.D.; and (4) the ALJ failed to properly consider subjective evidence regarding Lynch's symptoms, including statements or testimony by Lynch herself.

### A. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607,

620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in November 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior

to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,'

which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with* *id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.* §§ 404.1527(c)(4), 416.927(c)(4) (consistency).[2] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2),

---

[2] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *State Agency Medical and Psychological Consultants*

The ALJ considered the prior administrative findings in this case.

With respect to the plaintiff's Title II disability insurance benefits application, the prior administrative findings included opinions by state agency psychological consultants, Marci Cloutier, Ph.D., and John David Gavazzi, Psy.D., who both opined that there was insufficient evidence to evaluate the plaintiff's mental health impairments prior to her date of last insured. The ALJ found these opinions not persuasive as he had reviewed the entire evidence of record and concluded that there is sufficient evidence to determine that the plaintiff's mental health impairments were severe, though not disabling, for the entire period at issue. (Tr. 66–67; Tr. 98–99.)

With respect to plaintiff's Title XVI supplemental security income

application, Dr. Cloutier opined that Lynch had moderate limitations in each of the "paragraph B" criteria. The ALJ found this opinion somewhat persuasive. While the ALJ agreed that the plaintiff's severe mental health impairments cause no more than moderate limitations, the overall evidence of record is more consistent with a finding that the plaintiff has mild limitations in understanding, remembering, or applying information. At the reconsideration level, Dr. Gavazzi opined that the plaintiff has a mild limitation in understanding, remembering, or applying information, and moderate limitations in the remaining "paragraph B" criteria. The ALJ found this opinion persuasive, finding that the overall evidence of record supports and is consistent with a finding that the plaintiff has mild limitations in understanding, remembering, or applying information, and moderate limitations in the remaining "paragraph B" criteria. (Tr. 78–79, 80–82; Tr. 113–14, 115–18.)

With respect to the plaintiff's Title II disability insurance benefits application, the prior administrative findings also included opinions by state agency medical consultants, Crescenzo Giulio Calise, M.D., and David Paul Clark, M.D., who both opined there was insufficient evidence

to assess the severity of the plaintiff's physical impairments prior to her date last insured. The ALJ found these opinions unpersuasive. The ALJ reviewed the entire evidence of record and found sufficient evidence to determine that the plaintiff had non-severe medically determinable physical impairments during the period at issue. (Tr. 65–66; Tr. 97–98.)

With regard to the plaintiff's Title XVI supplemental security income application, Dr. Calise and Dr. Clark opined that Lynch's physical impairments were not severe. The ALJ found these opinions persuasive as he agreed that the overall evidence of record supports a finding that the plaintiff's medically determinable physical impairments were not severe during the period at issue. However, the ALJ limited the plaintiff to work at the light exertional level in order to accommodate her non-severe physical impairments. (Tr. 77–78; Tr. 112.)

The plaintiff only addresses the evaluation of these particular medical opinions in passing. She appears to primarily object to the ALJ's evaluation of the state agency consultants' findings and opinions based solely on the fact that, unlike the treating and examining medical sources, the consultants never actually examined Lynch in person. But the medical opinion of a non-examining medical source, such as a state

agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings, including the medical opinions of the state agency medical and psychological consultants, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. Examining Psychologist Andrew Cole, Psy.D.

On January 6, 2016, Lynch was seen and examined by a consultative examining psychologist, Andrew Cole, Psy.D. Dr. Cole opined that the plaintiff had no limitations in her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. He opined that Lynch had mild to moderate limitations in her ability to understand and

remember complex instructions and moderate limitations in her ability
to carry out complex instructions and make judgments on complex work-
related decisions. He opined that she had marked limitations in her
ability to interact appropriately with the public and moderate to marked
limitations in her ability to interact appropriately with the public and
moderate limitations in her ability to interact with co-workers. He opined
that she had moderate limitations in her ability to interact appropriately
with supervisors and to respond appropriately to usual work situations
and to changes in a routine work setting. (Tr. 383–89.)

      Upon review, the ALJ found that Dr. Cole's opinion was only

> somewhat persuasive. It was based on a one-time
> interaction with the claimant without the benefit of
> any meaningful record review. While it is broadly
> consistent with the results of the examination, the
> longitudinal evidence of record does not support the
> marked limitations assessed by Dr. Cole. While the
> undersigned agrees that claimant is limited by her
> severe mental health impairments, they cause no more
> than moderate limitations as set forth at length above.
> Additionally, the marked limitations in interacting are
> inconsistent with his findings that claimant was
> cooperative with adequate manner of relating.

(Tr. 23–24.)

      The plaintiff has not challenged the ALJ's evaluation of this
medical opinion.

### 3. *Treating Family Physician and Psychotherapist*

On or after December 10, 2019,[3] the plaintiff's treating family physician, Joanna Brady, M.D., and her treating psychotherapist, Elizabeth Gotwals, L.C.S.W., submitted a jointly completed psychiatric/psychological impairment questionnaire. The treating providers noted that Lynch had been a patient of theirs since September 26, 2013, and she was seen on a monthly basis for medication management. The treating providers reported diagnoses of: major depressive disorder, recurrent and moderate; generalized anxiety disorder; social anxiety disorder; post-traumatic stress disorder; and attention deficit disorder. They noted several psychosocial factors related to these diagnoses, including: a history of childhood sexual abuse, a past history of domestic violence; and the deaths of significant supportive extended family. They listed her several prescribed medications, including: Thorazine; Adderall; Vistaril; Effexon XR; and Valium. In support of their diagnoses and assessment, the treating providers reported psychological test results and numerous clinical signs and

---

[3] The form completed by the plaintiff's treating medical sources indicates a date of most recent exam of December 10, 2019.

symptoms and psychological test results. They reported that Lynch had experienced episodes of decompensation or deterioration in a work setting that caused her to withdraw from working since 2013. They reported that she experienced good days and bad days. The treating providers opined that she had marked limitations in her ability to remember locations and work-like procedures, to understand and remember one-to-two step instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule and consistently be punctual, to work in coordination with or near others without being distracted by them, to complete a workday without interruptions from psychological symptoms, to perform at a consistent pace without rest periods of unreasonable length or frequency, to ask simple questions or request assistance, to respond appropriately to workplace changes, to be aware of hazards and take appropriate precautions, to travel to unfamiliar places or use public transportation, and to make plans independently.[4] They opined that she had moderate-to-marked limitations in her ability to understand and remember

---

[4] The form defined "marked" as symptoms that symptoms that *constantly* interfere with the ability, more than two-thirds of an eight-hour workday.

detailed instructions, to carry out simple one-to-two step instructions, to carry out detailed instructions, to sustain ordinary routine without supervision, to make simple work-related decisions, to interact appropriately with the public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them, and to set realistic goals.[5] They opined that Lynch had moderate limitations in her ability to maintain socially appropriate behavior.[6] They opined that she had mild or no limitations in her ability to adhere to basic standards of neatness.[7] Dr. Brady and Ms. Gotwals opined that Lynch had been *completely* unable to work since at least December 2016 as a result of her mental impairments. (Tr. 870–75.)

Upon review, the ALJ found this joint medical opinion by Brady and Gotwals to be

> not persuasive, as it is not fully consistent with or supported by the longitudinal evidence of record. While

---

[5] The form defined "moderate-to-marked" as symptoms that *frequently* interfere with the ability, one-third to two-thirds of an eight-hour workday.

[6] The form defined "moderate" as symptoms that *occasionally* interfere with the ability, up to one-third of an eight-hour workday.

[7] The form defined "mild" as symptoms that *rarely* interfere with the ability.

> the undersigned agrees that claimant is limited by her severe mental health impairments, they cause no more than moderate limitations as set forth at length above. During the period at issue, she has been the primary caretaker for her two children, with treatment notes indicating that claimant is involved with her children's school, particularly with her son, who had an IEP. Claimant also reported benefit from her medication. As recently as March 2021, claimant reported that she got dressed every day and was able to do all household chores. She reported that she did not have a lot of money but that she was able to manage what she had. Accordingly, the undersigned does not find this opinion to be persuasive.

(Tr. 24 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this joint opinion as well.

The plaintiff argues that the ALJ failed to properly consider medical and non-medical evidence that purportedly supports or is consistent with this joint opinion by her treating medical sources, pointing to other medical evidence and opinions. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-

finder.'" *Rutherford*, 399 F.3d at 552 (quoting *Williams*, 970 F.2d at 1182); *see also Stancavage v. Saul*, 469 F. Supp. 3d 311, 334 (M.D. Pa. 2020). Moreover, none of this evidence is inconsistent with the ALJ's finding that the more extensive limitations in the Brady/Gotwols opinion were not supported by the objective medical evidence and were not consistent with evidence from other medical providers or other evidence in the record. While this same evidence might reasonably support a different conclusion as well, it does not compel it.

Accordingly, we find the ALJ's evaluation of the medical opinions of the plaintiff's treating medical sources, Dr. Brady and Ms. Gotwols, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 4. Examining Psychologist Anne Rene Miller, Ph.D.

On June 9, 2020, Lynch was seen and examined by a consultative examining psychologist, Anne Rene Miller, Ph.D. On examination, Dr. Miller opined that the plaintiff had no limitations in her ability to make judgments on simple work-related decisions and mild limitations in her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on complex work-related decisions.

She opined that Lynch had marked limitations in her ability to understand and remember complex instructions and carry out complex instructions. She opined that the plaintiff had marked limitations in her ability to interact appropriately with the public, and moderate limitations in her ability to interact appropriately with supervisors and co-workers and to respond appropriately to usual work situations and changes in a routine work setting. Finally, she opined that the plaintiff had attention problems at work and difficulty managing emotions. (Tr. 1065–77.)

Upon review, the ALJ found that Dr. Miller's opinion was:

> limitedly persuasive. It is based on a one-time interaction with the claimant without the benefit of any meaningful record review. While the undersigned agreed with the assessment that claimant has mild limitations in understanding, remembering or applying information and moderate limitations in interacting with others, the marked limitations assessed by Dr. Miller are not fully supported by the longitudinal evidence of record.

(Tr. 24.)

The plaintiff has not challenged the ALJ's evaluation of this medical opinion.

### 5. Examining Psychologist Christina Ryser, Ph.D.

On March 29, 2021, Lynch was seen and examined by an

independent examining psychologist, Christina Ryser, Ph.D. On examination, Dr. Ryser observed that the plaintiff appeared challenged to consistently understand, remember, and apply information. She opined that while Lynch may be able to follow some one-or-two-step instructions to carry out a task, she would be likely to struggle with detailed/complex instructions. She opined that claimant could be challenged to use reason and judgment to make work-related decisions, depending upon her mental state at a given time. She opined that the plaintiff appeared limited to concentrate, persist and maintain pace with regard to focusing attention on work activities and staying on task at a sustained rate. She also opined that the plaintiff was likely to have difficulty with the ability to relate to and work with supervisors, co-workers, and the public on a consistent and independent basis. She further opined that, overall, plaintiff's mental disorders would keep her well-being in a work setting and that she was likely to struggle in dealing with normal pressures in a competitive work setting. Dr. Ryser also completed a questionnaire in which she opined that the plaintiff had moderate limitations in her ability to understand and remember one-to-two-step instructions, carry out simple, one-to-two-step instructions,

make simple work-related decisions, interact appropriately with the public, and adhere to basis standards of neatness. Otherwise, she opined that the plaintiff had moderate-to-marked or marked limitations in understanding and memory, concentration and persistence, social interactions, and adaptation. She further opined that the plaintiff would be absent from work as a result of her impairments or treatment more than three times per month. (Tr. 1308–21.)

Upon review, the ALJ found that Dr. Ryser's opinions were:

> limitedly persuasive to the extent that they are consistent with a finding that claimant's mental health impairments result in mild to moderate limitations. However, the moderate-to-marked and marked limitations assessed by Dr. Ryser are not fully supported by the results of her examination or with the overall evidence of record. Indeed, Dr. Ryser noted that claimant was fully oriented, exhibited fairly good insight and judgment showed no looseness of associations, flight of ideas, circumstantiality, or tangentiality. Additionally, claimant reported that she could get dressed, perform household chores, and manage money. Treatment records indicate that claimant reported benefit with medication and that she continued to care for her children. Accordingly, these opinions are only limitedly persuasive.

(Tr. 24–25 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. He expressly

articulated the basis of his evaluation and his findings with respect to the persuasiveness of Dr. Ryser's opinion as well.

As with the Brady/Gotwols opinion, the plaintiff argues that the ALJ failed to properly consider medical and non-medical evidence that purportedly supports or is consistent with this joint opinion by her treating medical sources, pointing to other medical evidence and opinions. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-finder.'" *Rutherford*, 399 F.3d at 552 (quoting *Williams*, 970 F.2d at 1182); *see also Stancavage*, 469 F. Supp. 3d at 334. Moreover, none of this evidence is inconsistent with the ALJ's finding that the more extensive limitations in Dr. Ryser's opinion were not supported by the objective medical evidence and were not consistent with evidence from other medical providers or other evidence in the record. While this same evidence might reasonably support a different conclusion as well, it does not compel it.

Accordingly, we find the ALJ's evaluation of the medical opinions of the independent examining psychologist, Dr. Ryser, is supported by

substantial evidence and was reached based upon a correct application of the relevant law.

## B. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of Lynch's symptoms. *See generally* 20 C.F.R. §§ 404.1502(i), 416.902(n) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p,

2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 18–25.) This included the plaintiff's statements and testimony regarding the limiting effects of her symptoms.

Based on his consideration of the whole record, the ALJ properly concluded that, while Lynch's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 19.)

The plaintiff argues that the ALJ erred in considering her activities of daily living when evaluating his symptoms. It is indeed true that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981). But, nevertheless, an ALJ may properly consider a plaintiff's activities of daily living when evaluating her subjective complaints of pain or other symptoms. *See Turby v. Barnhart*, 54 Fed. App'x 118, 121 n.1 (3d Cir. 2002) ("Although certainly disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity, it is nonetheless appropriate for the ALJ to consider the number and types of activities in which the claimant engages.") (citations, brackets, and internal quotation marks omitted); *Durden v. Colvin*, 191 F. Supp. 3d 429, 442

(M.D. Pa. 2016) ("[I]t is permissible for such activities to be used to assess a claimant's [subjective allegations] in light of any true contradiction between his or her alleged severity of symptoms and the claimant's activities."). Indeed, the applicable regulations *mandate* such consideration by the ALJ. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) ("Factors relevant to your symptoms, . . . which we will consider include . . . [y]our daily activities . . . .").

The plaintiff also argues that the ALJ erred in referring to improvement in her mental health functioning with medication adjustments. But, as the Third Circuit has previously recognized, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (3d Cir. 1986). The agency's regulations expressly permit it to consider such improvement with medication in evaluating a claimant's symptoms. Indeed, the applicable regulations *mandate* such consideration by the ALJ. *See* 20 C.F.R. § 404.1529(c)(3)(iv) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms . . . .").

Although Lynch quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the plaintiff's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the plaintiff's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.  CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Lynch was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.


Dated: March 31, 2023                    ***s/Joseph F. Saporito, Jr.***
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge